Tina Wolfson, CA Bar No. 174806
*twolfson@ahdootwolfson.com*
Bradley K. King, CA Bar No. 274399
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, CA 90024
Tel: (310) 474-9111
Fax: (310) 474-8585

*Counsel for Plaintiff Calderon and the Class*

Jeffrey D. Kaliel (CA Bar No. 238293)
jkaliel@kalielpllc.com
Sophia Goren Gold (CA Bar No. 307971)
sgold@kalielpllc.com
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009
(202) 350-4783

*Counsel for Plaintiff Schertzer and the Class*

*[Additional Plaintiffs' Counsel Listed on Signature Page]*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALDERON, et al.,<br><br>      Plaintiffs,<br><br>vs.<br><br>KATE SPADE & CO., LLC,<br><br>      Defendant. | Case No.: 3:19-cv-00674-AJB-JLB<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**1. Violation of California's Unfair Competition Laws ("UCL"); California Business & Professions Code Sections 17200,** *et seq.*<br><br>**2. Violation of California's False Advertising Laws ("FAL"); California Business & Professions Code Sections 17500,** *et seq.*<br><br>3. **Violations of California Consumer Legal Remedies Act ("CLRA"); Civ. Code § 1750,** *et seq.*<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiffs Marilu Calderon and Kristen Schertzer ("Plaintiffs") bring this Consolidated Amended Class Action Complaint on behalf of themselves and all others similarly situated against Defendant Kate Spade & Company, LLC ("Defendant" or "Kate Spade"), and allege as follows based on personal knowledge of facts pertaining to them and on information and belief as to all other matters:

## I.   NATURE OF ACTION

1.   "If everyone is getting a deal, is anyone really getting a deal?"[1] This class action targets Kate Spade's unlawful, unfair, and fraudulent business practice of advertising fictitious prices and corresponding phantom discounts on its Kate Spade branded and/or trademarked lines of merchandise. As detailed herein, through a practice commonly known as "false reference pricing," Defendant misrepresents the existence, nature, and amount of price discounts on merchandise sold at Defendant's outlet stores by purporting to offer steep discounts off of fabricated market and/or former reference prices. The end result is a significant price disparity that creates the illusory impression of considerable savings, and ultimately induces consumers into making a purchase they would not have made absent the appearance of the fictitious discount.

2.   Specifically, Kate Spade utilizes a false and misleading reference price in the marketing and selling of Kate Spade branded and/or trademarked merchandise sold at its outlet stores. Kate Spade advertises its merchandise for sale by attaching a price tag to the item that sets forth a fictitious "reference price" described by Kate Spade as "Our Price". Kate Spade then employs large signage immediately next to the items for sale that states, "____% Off," indicating that the items are on sale for a designated "____% Off" . *See, e.g.*, **Exhibit A**. The "___% Off" price, or sale price, is substantially discounted from the "Our Price" reference price. *See id*.

---

[1] David Streitfeld, *It's Discounted, but is it a Deal? How List Prices Lost Their Meaning*, New York Times, https://www.nytimes.com/2016/03/06/technology/its-discounted-but-is-it-a-deal-how-list-prices-lost-their-meaning.html, (March 6, 2016), last accessed April 28, 2017.

3.     The reference price used to create the discount, however, is total fiction. The merchandise sold at Kate Spade outlet stores is created specifically for Kate Spade outlet stores and is *never* offered for sale, nor actually sold, at the represented reference price, either in the outlet store or at any other of Defendant's retail locations. Instead, the reference price is false and is solely used to induce consumers into believing that the merchandise was once sold for that amount. Kate Spade's deceptive pricing scheme has the effect of tricking consumers into believing they are receiving a significant deal by purchasing merchandise at a steep discount, when in reality, consumers are paying for merchandise at its regular or original retail price.

4.     Defendant's conduct violates federal law because the reference price does not represent a *bona fide* price at which Kate Spade previously sold a substantial quantity of the merchandise for a reasonable period of time as required by the Federal Trade Commission ("FTC"). In addition, Defendant's conduct violates California law because the fictitious reference price was not the prevailing market retail price within the three months immediately preceding the publication of the advertised former reference price.

5.     Specifically, Kate Spade violated and continues to violate: California's Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.* (the "UCL"); California's False Advertising Law, Business & Professions Code §§ 17500, *et seq.* (the "FAL"); the California Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA"); and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and false advertisements (15 U.S.C. § 52(a)).

6.     Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who have purchased one or more Kate Spade items at Defendant's Kate Spade's outlet stores that were deceptively represented as discounted from false former "reference prices," or "Our Price." Plaintiffs seek to halt the dissemination of this false, misleading, and deceptive pricing scheme, to correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased merchandise

tainted by this deceptive pricing scheme. Plaintiffs also seek to enjoin Kate Spade from using false and misleading misrepresentations regarding retail price comparisons in its labeling and advertising permanently. Further, Plaintiffs seek to obtain damages, restitution, and other appropriate relief in the amount by which Kate Spade was unjustly enriched as a result of its sales of merchandise offered a false discount.

7.    Finally Plaintiffs seek reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5, as this lawsuit seeks the enforcement of an important right affecting the public interest and satisfies the statutory requirements for an award of attorneys' fees.

## II.    JURISDICTION AND VENUE

8.    This Court has original jurisdiction of this Action pursuant to the Class Action Fairness Act, 28 U.S.C §1332 (d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and at least some members of the proposed Class have a different citizenship from Kate Spade. There are more than a 100 putative Class Members.

9.    The Southern District of California has personal jurisdiction over Kate Spade in this action because Kate Spade is a limited liability company or other business entity authorized to conduct and does regularly conduct business in the State of California. Kate Spade is registered with the California Secretary of State to do sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avails itself of the California market through the ownership and operation of over 20 retail outlet stores within the State of California.

10.    Venue is proper under 28 U.S.C. §1391(b)(2) because Kate Spade transacts substantial business in this District. A substantial part of the events giving rise to Plaintiffs' claims arose here.

## III.    PARTIES

### Plaintiff

11.    Plaintiff Marilu Calderon resides in Los Angeles, California. On March 19,

2017, Plaintiff Calderon, in reliance on Defendant's false and deceptive advertising, marketing and discounting pricing schemes, purchased two items from the Kate Spade outlet located at 5630 Paseo Del Norte Suite 100 SPC 108-D, Carlsbad, California 92008. The first item, a "Flavor of the Month" item, was advertised on the price tag as having an "Our Price" or reference price of $78.00. The in-store signposts represented that the product was 60% Off of the reference price. By purchasing the "Flavor of the Month" charm pendant for $31.20, Plaintiff Calderon was led to believe that she saved $46.80, or 60% off her purchase. In reality, Plaintiff Calderon's purported savings are grossly overstated, because any discount she received for the charm pendant was based off of Defendant's fabricated reference price for that product.

12.     Additionally, on January 10, 2018, Plaintiff Calderon purchased seven items from the Kate Spade outlet store located at 100 Citadel Drive, Suite 539, Commerce, California 90040. The first item, a "Neda" wallet was advertised on the price tag as having an "Our Price" or reference price of $159.99. The in-store signposts represented that the wallet was 50% Off of the reference price. The second item, a "Bradley" backpack was advertised on the price tag as having an "Our Price" or reference price of $299.00. The in-store signposts represented that the backpack was 50% Off of the reference price. The third item, a "Neda" purse was advertised on the price tag as having an "Our Price" or reference price of $229.00. The in-store signposts represented that the purse was 50% Off of the reference price. The fourth item, a "Charm Pendant" was advertised as having an "Our Price" or reference price of $58.00. The in-store signposts represented that the Charm Pendant was 50% Off of the reference price. The fifth item, a "Stripe Flutter Sleeve" product was advertised on the price tag as having an "Our Price" or reference price of $128.00. The in-store signposts represented that the product was 50% Off of the reference price. The sixth item, a "Stretch Legging" was advertised on the price tag as having an "Our Price" or reference price of $159.00. The in-store signposts represented that the Stretch Legging was 50% Off of the reference price. The final item, an "LS Jogger Set" was advertised on the price tag as having an "Our Price" or reference price of $79.00. The in-store signposts

represented that the product was 50% Off of the reference price. The seven items described above were offered at an additional 20% Off of the sale price. By purchasing the seven items for a total of $490.16, Plaintiff Calderon was led to believe that she saved approximately $451.82, and over 50% on all of her individual purchases. In reality, Plaintiff Calderon's purported savings are grossly overstated, because any discounts she received were based on Defendant's fabricated reference prices.

13.     Furthermore, on May 16, 2018, Plaintiff Calderon purchased two items from the Kate Spade outlet store located at 100 Citadel Drive, Suite 539, Commerce, California 90040. One of these items, an "Out of Office – 8 PL" phone case was advertised on the price tag as having an "Our Price" or reference price of $45.00. The in-store signposts represented that the phone case was 50% Off of the reference price. By purchasing the phone case for $22.50, Plaintiff Calderon was led to believe that she saved $22.50 or approximately 50% on her purchase. In reality, Plaintiff Calderon's savings are grossly overstated, as any purported discount she received was based off of Defendant's fabricated reference price for that product.

14.     Plaintiff Kristen Schertzer resides in San Diego, California. Plaintiff Schertzer, in reliance on Defendant's false and deceptive advertising, marketing and discounting pricing schemes, purchased two items from the Kate Spade outlet located at 5630 Paseo Del Norte Suite 100 SPC 108-D, Carlsbad, California 92008. The first item, a "Small Berrie" accessory bag, was advertised on the price tag as having an "Our Price" or reference price of $59.00. The in-store signposts represented that the product was 70% Off of the reference price. The second item, a Tayla" handbag, was advertised on the price tag as having an "Our Price" or reference price of $279.00. The in-store signposts represented that the handbag was 70% Off the reference price. By purchasing the two items for a total of $82.89, Plaintiff Schertzer was led to believe she saved approximately $236.60, or 70% on her individual purchases. In reality, Plaintiff Schertzer's purported savings are grossly overstated, because any discount she received for the accessory bag and handbag were based off Defendant's fabricated reference prices for those products.

15.   With regard to the above purchases, Plaintiffs would not have purchased, or would not have paid as much as they paid, if they had known Kate Spade's "Our Price" was a fabricated reference price and the discounts they thought they were receiving were illusory.

16.   With respect to every purchase described above, Plaintiffs believed they were purchasing authentic Kate Spade merchandise that was previously available at the Kate Spade retail store or other Kate Spade or department stores at the reference priced listed on the item's price tag. But, none of the products purchased by Plaintiffs were **_ever_** offered for sale at the reference price listed on the price tags and certainly not within the 90 days preceding Plaintiffs' purchases, as required by California law.

17.   Plaintiffs were damaged in their past purchases because Defendant's false reference price discounting scheme inflated the true market value of the items they purchased. Plaintiffs are susceptible to this reoccurring harm because they cannot be certain that Kate Spade has corrected this deceptive pricing scheme and they desire to shop at Kate Spade in the future. Plaintiffs do not have individual resources necessary to determine whether Defendant is complying with California and Federal law with respect to its retail pricing practices in the future.

**Defendant**

18.   Defendant Kate Spade & Company is a Delaware limited liability company with its principal executive offices at 2 Park Avenue, New York, NY 10016. Kate Spade maintains the Kate Spade brand, a line of high fashion handbags, purses, wallets, shoes, jewelry, clothing, accessories, and more. Kate Spade operates Kate Spade retail and outlet stores, as well as the katespade.com website, and advertises, markets, distributes, and/or sells clothing and fashion accessories in California and throughout the United States.

19.   Plaintiffs do not know the true names or capacities of the persons or entities sued herein as DOES 1-50, inclusive, and therefore sue such Defendants by such fictitious names. Plaintiffs are informed and believe, and upon such information and belief allege, that each of the DOE Defendants is in some manner legally responsible for the damages

suffered by Plaintiffs and the Class members as alleged herein. Plaintiffs will amend this Complaint to set forth the true names and capacities of these Defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

## IV. FACTUAL BACKGROUND

### The Fraudulent Sale Discounting Scheme

20.     Kate Spade is a worldwide fashion brand, specializing in the sale of designer handbags, clothing, shoes, jewelry, accessories, wallets, and more. Kate Spade directly markets its merchandise to consumers in the State of California and throughout the United States via its in-store advertisements and its e-commerce website (www.katespade.com). Kate Spade sells its own branded merchandise at its retail stores, outlet stores, and through its e-commerce website.

21.     The allegations in this complaint deal only the Kate Spade branded merchandise sold at Kate Spade outlet stores. The Kate Spade merchandise sold in the Kate Spade outlet stores is exclusively sold at the Kate Spade outlet stores and it is not sold anywhere else. Thus, there is no other market for the Kate Spade outlet store merchandise other than at Kate Spade's outlet stores.

22.     Kate Spade engages in a scheme to defraud its customers by perpetually discounting its merchandise in its outlet stores. Specifically, Kate Spade advertises its merchandise with a false reference price (referred to on its price tags as the "Our Price") and corresponding sale price immediately next to the item that states, "___% Off." The reference price conveys to the customer the purported regular, or original, price of the item. The "___% Off" sale price conveys to the customer a deeply discounted price at which the item is presently being offered for sale. The reference price is conveyed to the consumer on the price tag attached to the item while the "___% Off," or sale price, is advertised by large, colorful signage placed immediately next to the item. *See, e.g.*, **Exhibit A**.

23.     At no time is the Kate Spade outlet store merchandise ever offered for sale anywhere at the original reference price. The "Our Price" price, or regular price, is merely a false reference price, which Kate Spade utilizes to deceptively manufacture a deeply

discounted sale price referred to as the "___% Off" price on the merchandise sold at the Kate Spade outlet store during the Class period.

24.     Defendant's illusory discounts are particularly misleading because consumers often decide to make purchases based on an internal reference price—*i.e.*, consumers will often make a purchasing decision when they believe products to be less expensive than the perceived "normal" value of a given item. By featuring "discounts" from improper price comparisons, Defendant takes advantage of this well-documented behavior in hopes of influencing its customers into purchasing an item, and increasing its profits. Defendant's scheme also appeases consumers' concerns about missing a "better deal" and discourages comparison shopping by creating a false sense of urgency (an impression that the "sale" pricing is temporary and that a consumer should act quickly or lose significant savings).

25.     Retailers, including Kate Spade, understand that consumers are susceptible to a good bargain, and therefore, Kate Spade has a substantial interest in deception to generate sales. A product's "original," or reference, price matters to consumers because it serves as a baseline upon which consumers perceive a product's value. In this case, Kate Spade has marked its merchandise with an original or false reference price which conveys to consumers, including to Plaintiffs, "the product's worth and the prestige that ownership of the product conveys." *See Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1106 (9th Cir. 2013) (citing Dhruv Grewal & Larry D. Compeau, Comparative Price Advertising: Informative or Deceptive?, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992) ("By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."); *id*. at 56 ("[E]mpirical studies indicate that as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases.").

26.     Kate Spade's pricing advertisements uniformly include both the false reference price on the price tag attached to the item (the "Our Price") with a corresponding placard, or sign, placed next to the item that reads, "___% Off." This uniform scheme intends to and does provide misinformation to the customer. This misinformation

communicates to consumers, including Plaintiffs, that the Kate Spade products have a greater value than the advertised discounted price. As the Ninth Circuit has recognized, "[m]isinformation about a product's 'normal' price is…significant to many consumers in the same way as a false product label would be." *See Hinojos*, 718 F.3d at 1106.

27.   The Federal Trade Commission ("FTC") describes the fictitious pricing scheme employed by Defendant as deceptive:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. **If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for the reasonably substantial period of time, it provides a legitimate basis for the advertising** of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. **If on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial inflated price was established for the purpose of enabling the subsequent offer of a large reduction— the "bargain" being advertised is a false one**; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. § 233.1(a) (emphases added).

28.   Similarly, California statutory and regulatory law expressly prohibits false pricing schemes:

> For the purpose of this article the worth or value of anything advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> **No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement** or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code. § 17501 (emphasis added).

29.   Both California and Federal law confirm what is inherently apparent: a business acts improperly when it manufactures or exaggerates a discount intended to make

products appear more attractive.

**Plaintiffs' Investigation**

30.    Plaintiffs' investigation of Kate Spade revealed that Kate Spade outlet store merchandise is priced uniformly. That is, Kate Spade merchandise sold at Kate Spade outlet stores bears a price tag with a false reference price and a substantially discounted "__% Off" sale price. Plaintiffs' counsel's investigation confirmed that the merchandise purchased by Plaintiffs was priced with a false reference price and a corresponding discounted price for at least the 90-day period immediately preceding Plaintiffs' purchases.

31.    Plaintiffs' investigation cataloged the pricing practices of the Kate Spade outlet store located at, *e.g.*, the Carlsbad Premium Outlets, 5630 Paseo Del Norte, Carlsbad, California 92008 ("Carlsbad"), for several months before and after Plaintiffs' purchases. The false reference price and corresponding discount price scheme was both uniform and identical on almost all of the merchandise sold at Kate Spade outlet store. The only thing that changed was the requisite "___% Off" on certain merchandise items. The fraudulent pricing scheme applies to all Kate Spade outlet store merchandise offered on sale at the Kate Spade outlet store, including the items purchased by Plaintiffs.

**Plaintiffs and the Class are Injured by Kate Spade's Deceptive Pricing Scheme**

32.    The reference prices listed and advertised on Kate Spade's outlet store products (described on the price tags at "Our Price") are fake reference prices, utilized only to perpetuate Kate Spade's fake discount scheme.

33.    Kate Spade knows that its comparative price advertising is false, deceptive, misleading, and unlawful under California and federal law.

34.    Kate Spade fraudulently concealed from and intentionally failed to disclose to Plaintiffs and other members of the Class the truth about its advertised discount prices and former reference prices.

35.    At all relevant times, Kate Spade has been under a duty to Plaintiffs and the Class to disclose the truth about its false discounts.

36.     Plaintiffs relied upon Kate Spade's artificially inflated "Our Price" reference prices and false discounts when purchasing the charm pendant, wallet, backpack, purses/bags, leggings, and other accessories and clothing items from Kate Spade. Plaintiffs would not have made such purchases but for Kate Spade's representations regarding the false reference prices and the fictitious sales prices of the merchandise. Plaintiffs may in the future shop at Kate Spade's outlet stores.

37.     Plaintiffs and the Class reasonably and justifiably acted and relied on the substantial price differences that Kate Spade advertised, and made purchases believing that they were receiving a substantial discount on an item of greater value than it actually was. Plaintiffs, like other Class members, were lured in, relied on, and were damaged by the deceptive pricing scheme that Kate Spade carried out.

38.     Kate Spade intentionally concealed and failed to disclose material facts regarding the truth about false former price advertising in order to provoke Plaintiffs and the Class to purchase merchandise in its Kate Spade outlet stores.

## V.     CLASS ALLEGATIONS

39.     Plaintiffs bring this action on behalf of themselves and as a class action pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a proposed Class defined as follows:

> All persons in the United States who purchased one or more products from Kate Spade outlet stores at discounts from the reference price advertised as "Our Price" within the applicable Class Period (the "Nationwide Class").

In the alternative, Plaintiff seeks to represent a Class consisting of:

> All persons within the State of California who purchased one or more products from Kate Spade outlet stores at discounts from the reference price advertised as "Our Price" within the applicable Class Period (the "California Class").

Excluded from the Class are Kate Spade, as well as its officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of Kate Spade. Plaintiffs reserve the right to expand, limit,

modify, or amend this class definition, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

40. The Class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2), and (b)(3) for all of the following reasons.

41. ***Numerosity***: The class members are so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe that the proposed Class contains hundreds of thousands of individuals who have been damaged by Kate Spade's conduct as alleged herein. The precise number of Class members is unknown to Plaintiffs.

42. ***Existence and Predominance of Common Questions of Law and Fact***: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a. Whether, during the Class Period, Kate Spade used false reference price labels (the "Our Price" price tags) and falsely advertised price discounts on its Kate Spade branded products it sold in its retail outlet stores;

    b. Whether, during the Class Period, the reference prices advertised by Kate Spade were the prevailing market prices for the respective Kate Spade outlet store merchandise during the three months period preceding the dissemination and/or publication of the advertised former prices;

    c. Whether Kate Spade's alleged conduct constitutes violations of the laws asserted;

    d. Whether Kate Spade engaged in unfair, unlawful and/or fraudulent business practices under the laws asserted;

    e. Whether Kate Spade engaged in false or misleading advertising;

    f. Whether Plaintiffs and Class members are entitled to damages and/or restitution and the proper measure of that loss; and

g.      Whether an injunction is necessary to prevent Kate Spade from continuing to use false, misleading or illegal price comparison.

43.    **Typicality**: Plaintiffs' claims are typical of the claims of the members of the Class because, *inter alia*, all Class members have been deceived (or were likely to be deceived) by Kate Spade's false and deceptive price advertising scheme, as alleged herein. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the class.

44.    **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no antagonistic or adverse interest to those of the Class.

45.    **Superiority**: The nature of this action and the nature of laws available to Plaintiffs and the Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to them and the class for the wrongs alleged. The damages or other financial detriment suffered by individual Class members is relatively modest compared to the burden and expense that would be entailed by individual litigation of their claims against Kate Spade. It would thus be virtually impossible for Plaintiffs and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and Kate Spade will be permitted to retain the proceeds of its fraudulent and deceptive misdeeds.

46.    All Class members, including Plaintiffs, were exposed to one or more of Kate Spade's misrepresentations or omissions of material fact claiming that former "original" advertised prices were in existence. Due to the scope and extent of Kate Spade's consistent false "discount" price advertising scheme, disseminated in a years-long campaign to nationwide and California consumers via a number of different platforms—in-store displays, print advertisements, etc.—it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of

the Class. In addition, it can be reasonably presumed that all Class members, including Plaintiffs, affirmatively acted in response to the representations contained in Kate Spade's false advertising scheme when purchasing Kate Spade outlet merchandise at Kate Spade's retail outlet stores.

47.     Kate Spade keeps extensive computerized records of its customers through, *inter alia*, customer loyalty programs, co-branded credit cards and general marketing programs. Kate Spade has one or more databases through which a significant majority of Class members may be identified and ascertained, and it maintains contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation California's Unfair Competition Law ("UCL")**
**California Business and Professions Code § 17200, *et seq*.**

48.     Plaintiffs repeat and re-allege the preceding allegations.

49.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

50.     The UCL imposes strict liability. Plaintiffs need not prove that Kate Spade intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices— but only that such practices occurred.

"***Unfair*" Prong**

51.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

52.     Kate Spade's actions constitute "unfair" business practices because, as alleged above, Kate Spade engaged in misleading and deceptive price comparison advertising that represented false reference prices and corresponding deeply discounted prices. The

discounted prices were nothing more than fabricated reference prices leading to phantom markdowns. Kate Spade's acts and practices offended an established public policy of transparency in pricing, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

53.     The harm to Plaintiffs and Class members outweighs the utility of Kate Spade's practices. There were reasonably available alternatives to further Kate Spade's legitimate business interests other than the misleading and deceptive conduct described herein.

***"Fraudulent" Prong***

54.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

55.     Kate Spade's acts and practices alleged above constitute fraudulent business acts or practices as they have deceived Plaintiffs and are highly likely to deceive members of the consuming public. Plaintiffs relied on Kate Spade's fraudulent and deceptive representations regarding its "Our Price" or reference prices for products which Kate Spade sells exclusively at its Kate Spade outlet stores. These misrepresentations played a substantial role in Plaintiffs' decision to purchase those products at steep discounts, and Plaintiffs would not have purchased those products without Kate Spade's misrepresentations.

56.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

***"Unlawful" Prong***

57.     Kate Spade's acts and practices alleged above constitute unlawful business acts or practices as it has violated state and federal law in connection with its deceptive pricing scheme. The Federal Trade Commission's Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and prohibits the dissemination of any false advertisements. 15 U.S.C. § 52(a). Under the Federal Trade Commission, false former pricing schemes, similar to the ones implemented by Kate Spade,

are described as deceptive practices that would violate the FTCA:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former priced is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious – *for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one*; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

16 C.F.R. § 233.1(a) and (b) (emphasis added).

58.      In addition to federal law, California law also expressly prohibits false former pricing schemes. California's False Advertising Law, Bus. & Prof. Code §17501, ("FAL"), entitled "*Worth or value; statements as to former price*," states:

For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

*No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement* or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501 (emphasis added).

59.    As detailed in Plaintiffs' Third Cause of Action below under the CLRA, Cal. Civ. Code § 1770(a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

60.    The violation of any law constitutes an "unlawful" business practice under the UCL.

61.    As detailed herein, the acts and practices alleged were intended to or did result in violations of the FTCA, the FAL, and the CLRA.

62.    Kate Spade's practices, as set forth above, have misled Plaintiffs, the proposed Class, and the public in the past and will continue to mislead in the future. Consequently, Kate Spade's practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

63.    Kate Spade's violation of the UCL, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat that Class members and the public will be deceived into purchasing products based on price comparisons of arbitrary and inflated "ticket," or reference, prices and substantially discounted sale prices. These false comparisons created phantom markdowns and lead to financial damage for consumers like Plaintiffs and the Class.

64.    Pursuant to the UCL, Plaintiffs are entitled to preliminary and permanent injunctive relief and order Kate Spade to cease this unfair competition, as well as disgorgement and restitution to Plaintiffs and the Class of all Kate Spade's revenues associated with its unfair competition, or such portion of those revenues as the Court may find equitable.

### SECOND CAUSE OF ACTION
**Violation of California's False Advertising Law ("FAL")**
**California Business & Professions Code § 17500, *et seq.***

65.    Plaintiffs repeat and re-allege the preceding allegations.

66.     Cal. Bus. & Prof. Code § 17500 provides:

It is unlawful for any…corporation…with intent…to dispose of…personal property…to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated…from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement…which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…"

(Emphasis added).

67.     The "intent" required by the FAL is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

68.     Similarly, the FAL provides, "no price shall be advertised as a former price of any advertised thing, unless the alleged former prices was the prevailing market price…within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." Cal Bus. & Prof. Code § 17501.

69.     Kate Spade's routine of advertising discounted prices from false reference prices, which were never the prevailing market prices of those products and were materially greater than the true prevailing prices, was an unfair, untrue and misleading practice. This deceptive marketing practice gave consumers the false impression that the products were regularly sold on the market for a substantially higher price than they actually were; therefore, leading to the false impression that the products sold at the Kate Spade outlet stores were worth more than they actually were.

70.     Kate Spade misled consumers by making untrue and misleading statements and failing to disclose what is required as stated in the FAL, as alleged above.

71.     As a direct and proximate result of Kate Spade's misleading and false advertisements, Plaintiffs and Class members have suffered injury in fact and have lost money. As such, Plaintiffs request that this Court order Kate Spade to restore this money to

Plaintiffs and all Class members, and to enjoin Kate Spade from continuing these unfair practices in violation of the FAL in the future. Otherwise, Plaintiffs, Class members, and the broader general public will be irreparably harmed and/or denied an effective and complete remedy.

## THIRD CAUSE OF ACTION
### Violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq*.

72.     Plaintiffs repeat and re-allege the preceding allegations.

73.     This cause of action is brought pursuant to the CLRA. Plaintiffs and each member of the proposed class are "consumers" as defined by California Civil Code § 1761(d). Kate Spade's sale of Kate Spade products at its Kate Spade outlet and retail stores to Plaintiffs and the Class were "transactions" within the meaning of California Civil Code § 1761(e). The products purchased by Plaintiffs and the Class are "goods" within the meaning of California Civil Code § 1761(a).

74.     Defendant is a "person" as defined by Civil Code Section 1761(c), because Defendant is a corporation as set forth above.

75.     Plaintiffs and Class members purchased merchandise from Kate Spade outlet stores for personal, family, and household purposes, as defined by Cal. Civ. Code § 1761(d).

76.     As described herein, Defendant violated the CLRA by falsely representing the nature, existence and amount of price discounts by fabricating inflated references prices. Such a pricing scheme violated the CLRA in the following manner:

a.     In violation of Section 1770(a)(5), Defendant misrepresented that its merchandise had characteristics, benefits, or uses that they did not have (representing that merchandise was sold at a substantial discount when it was not);

b.     In violation of Section 1770(a)(7), Defendant misrepresented that the merchandise was of a particular standard, quality, and/or grade when they were of another (representing that merchandise was worth more than its actual value);

c.      In violation of Section 1770(a)(9), Defendant advertised merchandise with an intent not to sell them as advertised (representing the merchandise was substantially discounted when it was not); and

d.      In violation of Section 1770(a)(13), Defendant made false or misleading statements of fact concerning the amount of a price reduction (because the advertised "Our Price" or reference prices were false and inflated, and thus consumers did not receive the discounts they thought they were receiving);

e.      In violation of Section 1770(a)(16), Defendant misrepresented that the merchandise as supplied in accordance with previous representations when it was not (representing that merchandise was sold at discounts off of prevailing market prices when it was not).

77.     Defendant's misrepresentations regarding its reference prices and corresponding discounts off of those reference prices were material to Plaintiff and Class members because a reasonable person would have considered them important in deciding whether or not to purchase merchandise.

78.     Plaintiffs and Class members relied upon Defendant's material misrepresentations and would have acted differently had they known the truth.

79.     As a direct and proximate result of Defendant's material misrepresentations, Plaintiffs and Class members have been irreparably harmed.

80.     Pursuant to § 1782(a) of the CLRA, on February 15, 2019, Plaintiff Schertzer's counsel notified Kate Spade in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Kate Spade's intent to act.

81.     Pursuant to § 1782(a) of the CLRA, on April 11, 2019, Plaintiff Calderon's counsel notified Kate Spade in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Kate Spade's intent to act.

82.     Kate Spade failed to appropriately respond to Plaintiffs' letters or agree to

rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the Act. Therefore, Plaintiffs seek claims for actual and punitive damages, restitution, and injunctive relief, as is provided for pursuant to § 1780(a).

## VII.   PRAYER FOR RELIEF

83.   Wherefore, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class, request that this Court award relief against Kate Spade as follows:

A.   An order certifying the class and designating Marilu Calderon and Kristen Schertzer as the Class Representatives and their counsel as Class Counsel;

B.   Awarding Plaintiffs and the proposed Class members damages;

C.   Awarding restitution and disgorgement of all profits and unjust enrichment that Kate Spade obtained from Plaintiffs and the Class members as a result of its unlawful, unfair and fraudulent business practices described herein;

D.   Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Kate Spade from continuing the unlawful practices as set forth herein, and directing Kate Spade to identify, with Court supervisions, victims of its misconduct and pay them all money they are required to pay;

E.   Order Kate Spade to engage in a corrective advertising campaign;

F.   Awarding attorneys' fees and costs; and

G.   For such other and further relief as the Court may deem necessary or appropriate.

CONSOLIDATED COMPLAINT

## VIII. DEMAND FOR JURY TRIAL

84.    Plaintiffs hereby demand a jury trial for all of the claims so triable.


Dated: July 8, 2019                                    **CARLSON LYNCH LLP**


*/s/ Todd D. Carpenter*
Todd D. Carpenter (CA 234464)
1350 Columbia Street, Ste. 603
San Diego, California 92101
Telephone: (619) 762-1910
Facsimile: (619) 756-6991
tcarpenter@carlsonlynch.com

Jeffrey D. Kaliel (CA Bar No. 238293)
jkaliel@kalielpllc.com
Sophia Goren Gold (CA Bar No. 307971)
sgold@kalielpllc.com
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009
(202) 350-4783

*Counsel for Plaintiff Schertzer and the Class*

Tina Wolfson, CA Bar No. 174806
*twolfson@ahdootwolfson.com*
Bradley K. King, CA Bar No. 274399
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, CA 90024
Tel: (310) 474-9111
Fax: (310) 474-8585

*Counsel for Plaintiff Calderon and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on that on July 8, 2019, I caused the following documents to be electronically filed with the Clerk of Court using the CM/ECF system and served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system:

**CONSOLIDATED CLASS ACTION COMPLAINT**

Pursuant to the CM/ECF system, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmittal facilities. Any other counsel of record will be served by electronic mail and U.S. mail.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 8, 2019.

**/s/ Todd D. Carpenter_____**